JUDGE CARTER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 03773

| | |
|---|---|
| ERROL RUDMAN and RUDMAN PARTNERS LP, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHC GROUP LTD., WILLIAM J. AMELIO, JOAN S. HOOPER, REBECCA CAMDEN, WILLIAM E. MACAULAY, JONATHAN LEWIS, KENNETH W. MOORE, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., UBS SECURITIES LLC, HSBC SECURITIES (USA) INC., RBC CAPITAL MARKETS, LLC, WELLS FARGO SECURITIES, LLC, BNP PARIBAS SECURITIES CORP., STANDARD BANK PLC, CORMARK SECURITIES (USA) LTD., COWEN AND COMPANY, LLC, RAYMOND JAMES & ASSOCIATES, INC., SIMMONS & COMPANY, INTERNATIONAL, and TUDOR, PICKERING, HOLT & CO. SECURITIES, INC.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br> |

Plaintiffs Errol Rudman and Rudman Partners LP ("Plaintiffs"), on behalf of themselves and all others similarly situated, by undersigned counsel, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' counsel, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary analysis. Plaintiffs' investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiffs believe that substantial

additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

### SUMMARY

1. Plaintiffs bring this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against (1) CHC Group Ltd. ("CHC" or the "Company"); (2) certain of the Company's senior executives and directors who signed the Registration Statement (as defined below) in connection with the Company's January 16, 2014 initial public offering (the "Offering"); and (3) each of the underwriters for the Offering. Plaintiffs allege that the Registration Statement (and Prospectus incorporated therein) omitted material information. Plaintiffs seek to bring this action on behalf of themselves and as a class action on behalf of a class of investors who acquired CHC common stock pursuant and/or traceable to the Offering during the time period between January 16, 2014 and July 10, 2014 (the "Class Period").

2. CHC, together with its subsidiaries, is the world's largest commercial helicopterr operator in terms of revenue. The bulk of the Company's business comes from supporting long-distance crew changes for offshore oil facilities. CHC's shares are listed and trade on the New York Stock Exchange under the ticker symbol "HELI."

3. On January 16, 2014, the SEC declared CHC's Registration Statement effective, and CHC filed a Rule 424(b)(4) Prospectus with the SEC, in which it announced the offering of 31,000,000 ordinary shares at $10.00 each. Net proceeds to the Company, before expenses, were estimated to be $293,725,000.

4. As detailed below, the Offering materials omitted to disclose that one of CHC's two largest customers, Petróleo Brasileiro S.A ("Petrobras"), had stopped making payments on its contracts with the Company.

5. On July 10, 2014, Joan S. Hooper, CHC's Chief Financial Officer, revealed that Petrobras had not made payments on contracts to CHC since April 2013, nearly ten months before CHC's IPO. Additionally, Hooper disclosed that CHC did not expect to recover revenues relating to the contract, that guidance for future quarters would not reflect any recovery, and that CHC's revenues and EBITDAR for fiscal year 2014 would come in at bottom of the Company's guidance ranges due to the suspension of contract payments by Petrobras.

6. In response to those disclosures, on July 10, 2014, the Company's stock price declined to $7.63 per share, nearly 12% below its July 9, 2014 closing price, and more than 23% below the IPO price.

## JURISDICTION AND VENUE

7. The claims on behalf of the Class arise under Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l and 77o). This Court has jurisdiction pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v); and 28 U.S.C. §§ 1331 and 1337.

8. Venue is proper in this District pursuant to Section 22 of the Securities Act, and 28 U.S.C. § 1391(b). Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District.

9. Defendants conducted business in this District and/or committed many of the acts complained of in this District, including the preparation and dissemination of the

materially misleading Offering Materials (which were prepared by Defendants, or with their participation, acquiescence, encouragement, cooperation and/or assistance).

10. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of a national securities exchanges.

## PARTIES

**A.  Plaintiffs**

11. Plaintiffs Errol Rudman and Rudman Partners LP ("Plaintiffs") purchased shares of the Company's common stock, which were issued pursuant and/or traceable to the Registration Statement and the Offering, as is set forth in the accompanying certification, and were damaged thereby.

**B.  Defendants**

12. CHC is a holding company incorporated in the Cayman Islands, with its principal executive offices located in British Columbia, Canada. CHC is the world's largest commercial helicopter operator, with bases on six continents. Its shares are listed and trade on the New York Stock Exchange under the ticker symbol "HELI."

13. Defendant William J. Amelio was CHC's Chief Executive Officer ("CEO"), President, and a member of its Board of Directors, and President and CEO of CHC's subsidiary CHC Helicopter at all times relevant to this action. Defendant Amelio participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Amelio signed. Defendant Amelio also made false and misleading statements in the Company's earnings calls in connection with its quarterly filings with the SEC.

14. Defendant Joan Hooper is and has been the Chief Financial Officer and Senior Vice President of CHC since September 2013 and held the same positions at CHC Helicopter since October 2011. Defendant Hooper participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Hooper signed. Defendant Hooper also made false and misleading statements in the Company's earnings calls in connection with its quarterly filings with the SEC.

15. Defendant Rebecca Camden is the Chief Accounting Officer ("CAO") of CHC. Defendant Camden participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Camden signed.

16. Defendant William E. Macaulay was the Chairman of the Nominating & Corporate Governance Committees for CHC between October 2013 and October 2014. Defendant Macaulay participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Macaulay signed.

17. Defendant Jonathan Lewis is a Director at CHC and CHC Helicopter. Defendant Lewis participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Lewis signed.

18. Defendant Kenneth W. Moore was a Director at CHC and CHC Helicopter until October 2013. Defendant Moore participated in preparing the Preliminary Prospectus, the Prospectus, and the Registration Statement, which Defendant Moore signed.

19. Defendants Amelio, Hooper, Camden, Macaulay, Lewis, and Moore are collectively referred to herein as the "Individual Defendants."

20. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") is headquartered in this District. J.P. Morgan was an underwriter of the Company's Offering and served as a

financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Defendant J.P. Morgan acted as co-lead joint book-runner in the Offering.

21. Defendant Barclays Capital Inc. ("Barclays") is headquartered in this District. Barclays was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Defendant Barclays acted as co-lead joint book-runner in the Offering.

22. Defendant UBS Securities LLC ("UBS") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus. Defendant UBS acted as co-lead joint book-runner in the Offering.

23. Defendant HSBC Securities (USA) Inc. ("HSBC") is headquartered in this District. HSBC was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

24. Defendant RBC Capital Markets, LLC ("RBC") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

25. Defendant Wells Fargo Securities, LLC ("Wells Fargo") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

26. Defendant BNP Paribas Securities Corp. ("Paribas") is headquartered in this District. Paribas was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

27. Defendant Standard Bank Plc ("Standard Bank") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

28. Defendant Cormark Securities (USA) Ltd. ("Cormark") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

29. Defendant Cowen and Company, LLC ("Cowen") is headquartered in this District. Cowen was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

30. Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

31. Defendant Simmons & Company International ("Simmons") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

32. Defendant Tudor, Pickering, Holt & Co. Securities, Inc. ("Tudor") was an underwriter of the Company's Offering and served as a financial advisor for and assisted in the preparation and dissemination of the Company's false and misleading Registration Statement and Prospectus.

33. Defendants J.P. Morgan, Barclays, UBS, HSBC, RBC, Wells Fargo, Paribas, Standard Bank, Cormark, Cowen, Raymond James, Simmons, and Tudor are referred to collectively as the "Underwriter Defendants."

34. Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the Offering. They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

## SUBSTANTIVE ALLEGATIONS

35. The Registration Statement stated the following about CHC's relationship with its customers:

> *Strong long-term relationships with leading oil and gas producers.* We believe we have strong relationships with our top ten customers, which include Statoil, Petrobras, BP, Shell, Total, ENI and other oil and gas producers, many of which we have continuously served for over a decade. We establish relationships with our customers at both the regional and global level, which positions us to grow our business as our customers grow. We believe this enables us to better understand our customers' growth objectives and positions us to participate in contract tenders. Our strong customer relationships and track record of performance have allowed us to achieve a 94% retention rate on contract renewals and extensions and a 64% win rate on all contract tenders over the 12 month period through August 2013.

36. CHC reinforced the importance of its relationship with Petrobras in its "Helicopter Services" and "Customers and Contracts" business overview segments of the Registration Statement, where the Company stated:

> As of July 31, 2013, 90% of our helicopters in the Americas region operate in Brazil . . . .
>
> * * *
>
> Our top two customers for the year ended April 30, 2013 were Statoil and Petrobras, accounting for 14% of our revenues each. No other single customer accounted for more than 10% of our revenues during this period.

37. The foregoing was misleading because the Company failed to disclose that one of its two largest contracts was currently not being performed and had not been paid for since April 2013, because one of CHC's largest customers, Petrobras, had stopped making payments on its contracts with the Company.

38. On July 10, 2014, CHC held an earnings call in conjunction with the release of its fourth quarter financial results. Defendant Amelio revealed for the first time:

> *[S]tarting in April of 2013, one of our customers, Petrobras, stopped making payments on contracts to CHC and other operators of 225s in Brazil until overwater flights with those aircraft resumed. When we provided guidance for fiscal 2014 we included the recovery of certain payments from this customer because we were in the midst of discussions with them and had a high confidence level we would favorably conclude those discussions in fiscal '14. However, this did not happen in Q4 as expected*, resulting in both revenue and EBITDAR falling at the lower end of our guidance ranges.

39. In reaction to the foregoing, shares of CHC declined from their closing price on July 9 at $8.62 per share, to $7.63 per share on July 10, 2014. The stock is presently trading around $1.68 per share.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

40. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

9

otherwise acquired the Company's common stock pursuant and/or traceable to the Company's Offering and Registration Statement during the Class Period, January 16, 2014 and July 10, 2014, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

　　a. whether the federal securities laws were violated by Defendants' acts

   as alleged herein;

  b. whether the Prospectus and Registration Statement contained materially misleading omissions; and

  c. to what extent Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

  45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
### Violations of §11 of the Securities Act
### Against All Defendants

  46. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

  47. This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

  48. The Registration Statement was inaccurate and misleading and omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

  49. CHC is the issuer of the securities purchased by Plaintiffs and the Class. As such, CHC is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

50. The Individual Defendants each signed the Registration Statement. As such, each is liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, and to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiffs and the Class.

51. The Underwriter Defendants each served as underwriters in connection with the Offering. As such, each is liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. These Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material

misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiffs and the Class.

52. By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

53. Plaintiffs acquired the Company's common stock pursuant and/or traceable to the Registration Statement and without knowledge of the untruths and/or omissions alleged herein. Plaintiffs sustained damages and the price of the Company's common stock declined substantially due to material misstatements and/or omissions in the Registration Statement.

54. This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

55. By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

### SECOND CLAIM
**Violations of §12(a)(2) of the Securities Act**
**Against All Defendants**

56. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

57. Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering. Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering. The Registration Statement was used to induce investors, such as Plaintiffs and the other members of the Class, to purchase the Company's shares.

58. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein. Defendants' acts of solicitation included participating in the preparation of the false and misleading Registration Statement.

59. As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

60. Plaintiffs and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

61. The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects. Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

62. This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

### THIRD CLAIM
**For Violation of §15 of the Securities Act
Against the Individual Defendants**

63. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

64. The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act. By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein.

65. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

A. Declaring this action to be a proper class action and certifying Plaintiffs as Class representative;

B. Awarding Plaintiffs and the other members of the Class compensatory damages;

C. Awarding Plaintiffs and the other members of the Class rescission on their §12(a)(2) claims;

D. Awarding Plaintiffs and the other members of the Class pre-judgment and post- judgment interest, as well as reasonable attorney's fees, expert witness fees, and other costs and disbursements; and

E. Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiffs hereby request a trial by jury.

Dated: May 15, 2015
New York, New York

**KIRBY McINERNEY LLP**

*/s/ Ira M. Press*
Ira M. Press
825 Third Avenue, 16th Floor
New York, New York 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Counsel for Plaintiffs*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

**ERROL M. RUDMAN** declares as follows:

1. I am the General Partner and Investment Manager of Rudman Partners, L.P. As such, I am authorized to make this certification on behalf of myself and Rudman Partners, L.P. (collectively "Plaintiffs).

2. I have reviewed the attached complaint, and have authorized its filing on Plaintiffs' behalf. Plaintiffs retain Kirby McInerney LLP to pursue such action on a contingent fee basis.

3. Plaintiffs did not purchase CHC securities at the direction of plaintiffs' counsel or in order to participate in this private action.

4. Plaintiffs are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5. Plaintiffs' transactions in CHC securities during the class period set forth in the complaint are set forth below on the attached Schedule A.

6. During the three years prior to the date of this certification, Plaintiffs have not served or sought to serve as a representative party, for a class in any action filed under the federal securities laws.

7. Plaintiffs will not accept payment for serving as a representative party on behalf of the class beyond Plaintiffs' pro rata share of any class recovery, except as ordered/ approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of May, 2015.

_____
Signature

## SCHEDULE A

**Transactions of Errol Rudman and Rudman Partners, L.P. in CHC Common Stock Pursuant and/or Traceable To the Offering:**

**Errol Rudman**

| Date | Purchase/Sale | No. of Shares | Price Per Share |
|---|---|---|---|
| 01/1714 | Purchase | 400 | 10.0000 |
| 01/17/14 | Purchase | 4,000 | 9.4759 |
| 09/30/14 | Sale | 4,400 | 5.6011 |

**Rudman Partners LP**

| Date | Purchase/Sale | No. of Shares | Price Per Share |
|---|---|---|---|
| 01/17/14 | Purchase | 46,000 | 9.4759 |
| 01/17/14 | Purchase | 4,600 | 10.0000 |
| 09/30/14 | Sale | 46,000 | 5.6011 |
| 09/30/14 | Sale | 4,600 | 5.6011 |