UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERROL RUDMAN and RUDMAN PARTNERS LP, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>-against-<br><br>CHC GROUP LTD., WILLIAM J. AMELIO, JOAN S. HOOPER, REBECCA CAMDEN, WILLIAM E. MACAULAY, JONATHAN LEWS, KENNETH W. MOORE, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., UBS SECURITIES LLC, HSBC SECURITIES (USA) INC., RBC CAPITAL MARKETS, LLC, WELLS FARGO SECURITIES, LLC, BNP PARIBAS SECURITIES CORP., STANDARD BANK PLC, CORMARK SECURITIES (USA) LTD., COWEN AND COMPANY, LLC, RAYMOND JAMES & ASSOCIATES, INC., SIMMONS & COMPANY, INTERNATIONAL, and TUDOR, PICKERING, HOLT & CO. SECURITIES, INC.,<br><br>        Defendants. | Case No. 15 Civ. 3773 (LAK)<br><br>HON. LEWIS A. KAPLAN<br><br>**ECF Case**<br><br><u>Class Action</u> |

**DECLARATION OF IRA M. PRESS IN SUPPORT OF FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT OF LITIGATION EXPENSES**

  I, IRA M. PRESS, declare, pursuant to 28 U.S.C. § 1746, as follows:

  1.  I am a member of the law firm of Kirby McInerney LLP, counsel for the Court-appointed Lead Plaintiffs Errol Rudman and Rudman Partners L.P. (the "Lead Plaintiffs") and Lead Counsel for the Settlement Class in the above-captioned action ("Action").

  2.  I was actively involved in the prosecution of this case, am intimately familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my

close supervision and active participation in the Action.

3. I respectfully submit this Declaration in support of Lead Plaintiffs' motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final approval of the Settlement of this Action and the Plan of Allocation of the Net Settlement Fund (the "Plan of Allocation").[1]  I also submit this Declaration in support of Lead Counsel's motion, pursuant to Rules 23(h) and 54(d)(2), for an award of attorneys' fees and reimbursement of Lead Counsel's expenses incurred during the prosecution of this Action.

## I. BENEFITS OF THE SETTLEMENT TO THE SETTLEMENT CLASS

4. The Stipulation, filed with this Court on June 19, 2017, provides for the gross payment of $3.85 million in cash (the "Settlement Fund") to the Settlement Class in exchange for a release of the Settled Claims brought against Defendants.[2] Since July 24, 2017, the Settlement Fund has been invested in securities backed by the full faith and credit of the U.S. Government and has been earning interest for the benefit of the Settlement Class.

5. The Settlement was only reached after extensive investigation, aggressive motion practice, and an intensive, arm's-length mediation process conducted by Lawrence W. Pollack, Esq. of JAMS (the "Mediator"), followed by numerous additional communications to resolve key settlement terms. Moreover, the settlement, which was reached following the Court's

---

[1] Unless otherwise noted, all capitalized terms herein have the same meaning as is ascribed to those terms in the Stipulation of Settlement (the "Stipulation"), dated June 16, 2017, and filed with the Court on June 19, 2017. *See* ECF No. 64-1.

[2] "Defendants" are all together: CHC Group Ltd. ("CHC"); William J. Amelio, Joan S. Hooper, Rebecca Camden, William E. Macaulay, Jonathan Lewis, and Kenneth W. Moore (collectively, the "Individual Defendants"); J.P. Morgan Securities LLC, Barclays Capital Inc., UBS Securities LLC, HSBC Securities (USA) Inc., RBC Capital Markets, LLC, Wells Fargo Securities, LLC, BNP Paribas Securities Corp., Standard Bank PLC, Cormark Securities (USA) Ltd., Cowen and Company, LLC, Raymond James & Associates, Inc., Simmons & Company, International, and Tudor, Pickering, Holt & Co. Securities, Inc. (collectively the "Underwriter Defendants").

dismissal of Lead Plaintiffs' claims, eliminates the substantial risk that continued litigation of an appeal of the Court's dismissal order would have likely resulted in no recovery at all. The settlement also eliminates the risks of expensive and protracted litigation, even in the unlikely event of a successful appeal, that still might result in no recovery for the Class.

6. In connection with their motion to dismiss, Defendants argued, *inter alia*, that: (i) Plaintiffs' claims were barred by the applicable statute of limitations; (ii) the Complaint did not allege a material misrepresentation or omission required to be disclosed in order to make the statements in the Registration Statement not misleading; and (iii) the Section 12(a)(2) claims against the Individual Defendants failed because none were statutory sellers. The Court's November 7, 2016 Memorandum Opinion, ECF No. 53 ("MTD Order"), which granted Defendants' motion to dismiss, largely agreed with Defendants' arguments. Even had Defendants' motion been denied, and the Action proceeded to trial, Lead Plaintiffs understood that their ability to prove the elements of their claims would have become an important jury issues with no guarantee of a favorable outcome.

7. In light of these and other difficulties the Settlement Class faced in seeking to prove its case, Lead Plaintiffs and Lead Counsel believe that this Settlement represents an excellent recovery for the Settlement Class.

8. After the deduction of attorneys' fees, expenses, and notice and administration costs approved by the Court, together with any taxes and tax expenses that may be payable by the Settlement Fund, the Net Settlement fund will be distributed to Authorized Claimants, *i.e.,* Settlement Class Members who submit timely and valid Proof of Claim Forms, in accordance with the Plan of Allocation.

## II.  THE COURT'S ORDER GRANTING CONDITIONAL CLASS CERTIFICATION, AND PROVIDING FOR NOTICE

9.  On May 24, 2017, Lead Plaintiffs filed a motion seeking: (i) preliminary approval of the Settlement; (ii) certification of the Class for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (iii) approving the forms for mailed and published notice of the Settlement; (iv) authorizing the mailing and publication of the notices; and (v) setting a date and time for the fairness hearing with respect to the proposed Settlement and Plan of Allocation.  *See* ECF No. 58-60.  By order dated May 25, 2017, the Court denied Lead Plaintiffs' motion without prejudice to renewal, stating that the Court "does not grant 'preliminary approval' of proposed class action settlements, as such characterizations, made before full consideration of a proposed settlement, risk conclusions on the part of absent class members that the deck is stacked against them even before they have had an opportunity to object." *See* ECF No. 61. The Court instructed Lead Plaintiffs to revise the Settlement agreement and notices to eliminate any reference to preliminary approval of the Settlement, and to file a new motion that dos not seek preliminary approval of the Settlement.

10.  Lead Plaintiffs made the instructed revisions and on June 19, 2017, filed a revised motion seeking entry of an order: (i) certifying the class for settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (ii) approving the forms for mailed and published notice of the Settlement; (iii) authorizing the mailing and publication of these notices; (iv) setting a date and time for the fairness hearing with respect to the proposed Settlement, Plan of Allocation, and application for an award of attorneys' fees; and (v) setting a schedule for submissions in support of, and for objections to, the proposed Settlement, Plan of Allocation, and attorneys' fee application.  *See* ECF No. 62-64.

11. On June 28, 2017, the Court issued an Order Granting Conditional Class Certification, and Providing for Notice (the "Conditional Certification Order"), which certified the Settlement Class and approved notice to the Settlement Class. *See* ECF No. 67, attached hereto as Exhibit A.

12. In the Conditional Certification Order, the Court made the following findings, determinations, and directives, among others:

(i) Certifying the Action as a class action for purposes of the Settlement under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of "all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class in accordance with the requirements set forth herein) who purchased or otherwise acquired CHC securities pursuant and/or traceable to the Registration Statement and accompanying documents issued in connection with CHC's January 16, 2014 IPO including CHC's securities purchased in the IPO on or about January 16, 2014 or purchased on the open market during the period from January 16, 2014 through July 10, 2014, inclusive" (the "Class Period");

(ii) Scheduling a hearing (the "Settlement Hearing") for October 2, 2017 at 4:00 p.m. to consider, among other things: whether the Court should grant final certification to the Settlement Class; whether the proposed Settlement is fair, reasonable, and adequate, and should be approved; whether the proposed Plan of Allocation is fair and reasonable and should be approved; whether the Judgment as provided under the Stipulation should be entered; and whether Lead Counsel's application for an award of attorneys' fees and reimbursement expenses should be approved;

(iii) Approving the form and content of the Notice of Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form, and the Summary Notice;

(iv) Appointing A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator"), under the supervision of Lead Counsel, to supervise and administer the notice and claims procedure, and directing that the Notice and Proof of Claim Form be disseminated, and that the Summary Notice be published; and

(v) Establishing procedures and deadlines for Settlement Class Members to exclude themselves or object to the Settlement, Plan of Allocation, and the attorneys' fees and reimbursement of expenses requested by Lead Counsel.

13. Annexed hereto as Exhibit B is the Affidavit of Eric J. Miller Regarding Compliance with Notice Requirements in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated August 23, 2017 ("A.B. Data Aff."). The A.B. Data Affidavit attests to, among other things, the efforts made to disseminate the Notice and Proof of Claim Form and publication of the Summary Notice, all in compliance with the Conditional Certification Order. *See* A.B. Data Aff. ¶¶ 2-9. The Notice and Proof of Claim Forms (collectively, the "Notice Packet") were also posted on a website created specifically in connection with the Settlement. *See id.* ¶ 12. The Summary Notice was also published in *PR Newswire*. *Id.* ¶ 9 & Ex. B.

14. As directed by the Court, Lead Counsel has actively monitored the progress of the notice program and administration of the Settlement through telephone conferences and email communications with the Claims Administrator. This has enabled Lead Counsel to monitor the creation and distribution of Notice Packets mailed by the Claims Administrator to Settlement Class Members.

15. Pursuant to Paragraphs 7 and 8 of the Conditional Certification Order, as of August 23, 2017, a total of 9,536 Notice Packets have been disseminated to potential Settlement Class Members. *See* A.B. Data Aff. ¶¶ 2-8.

III.   **SUMMARY OF THE ALLEGATIONS AND CLAIMS**

16. At all relevant times, CHC was one of the world's two largest commercial helicopter operators. It generated approximately 84% of its business from customers in the oil and gas industry, for whom CHC provided helicopter transportation to rotate crews on and off offshore oil and gas production and/or exploration facilities. During the relevant time period,

Brazil was CHC's fastest growing market.

17. On January 16, 2014, CHC conducted its IPO. In connection with the IPO, CHC filed a Registration Statement and Prospectus (the "Offering Documents") with the United States Securities and Exchange Commission ("SEC"), and sold 31 million CHC shares at a price of $10.00 per share, and a further 3 million shares through the Underwriter Defendants.

18. Lead Plaintiffs alleged that the Offering Documents filed with the SEC in connection with CHC's IPO omitted to disclose material information in violation of sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

19. Specifically, the Consolidated Amended Class Action Complaint (the "Amended Complaint") alleged that the Offering Documents omitted to disclose that: (i) CHC's largest customer, Petroleo Brasileiro S.A. ("Petrobras") had informed CHC in March 2013 that it would cease making payments owed under its contracts with CHC for Eurocopter EC225 ("EC225") helicopter services until an industry-wide grounding of EC225s ended; (ii) consistent with this announcement, Petrobras refused to make payments under its EC225 contracts with CHC from April 2013 through December 2013, including any payment of the "fixed" standing charges, which CHC maintained remained payable irrespective of actual flight hours; and (iii) at the time of the IPO, Petrobras and CHC were embroiled in a formal dispute over Petrobras' nonpayment.

20. On March 12, 2014, CHC announced disappointing Fiscal 2014 Guidance and lackluster results for the quarter ending January 31, 2014, attributing those results, in part, to "the negative effect of the suspension and subsequent return to service of the EC225." Defendants' March 14, 2014 10-Q noted that the grounding had negatively impacted revenues in Brazil. However, it was not until July 10, 2014 that Defendants first disclosed, during a conference call, that (i) $21.3 million in revenue losses in Brazil were a result of Petrobras' refusal to pay the

fixed standing charges under its contracts during the EC225 grounding, and (ii) the companies were engaged in a formal dispute over such nonpayment, and had been at the time of the IPO. In response, CHC's stock price fell 11.5%, from its July 9, 2014 closing price of $8.62 per share to close at $7.63 per share on July 10, 2014.

## IV. PROCEDURAL HISTORY, PROSECUTION OF THE ACTION, AND SETTLEMENT

21. This putative class action commenced on May 15, 2015 upon the filing of a Class Action Complaint against Defendants alleging violations of sections 11, 12(a)(2) and 15 of the Securities Act. Plaintiffs sought to bring claims on behalf of a class of investors who acquired CHC common stock pursuant and/or traceable to the IPO during the time period between January 16, 2014 and July 10, 2014.

22. On July 17, 2015, two motions for lead plaintiff appointment were filed. On September 21, 2015, the Court entered an Order consolidating the related actions, appointing Errol Rudman and Rudman Partners LP as Lead Plaintiffs, and approving Lead Plaintiffs' selection of Kirby McInerney LLP as Lead Counsel.

23. Lead Plaintiffs filed their Amended Complaint on November 6, 2015. On December 18, 2015, Defendants filed a Joint Motion to Dismiss the Complaint. On January 29, 2016, Lead Plaintiffs filed their Opposition to the Joint Motion and on February 19, 2016, Defendants filed their Joint Reply. Thereafter, on May 5, 2016, CHC filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, which afforded CHC an automatic stay under Section 362(a) of the Bankruptcy Code.

24. On October 20, 2016, during the pendency of the motion to dismiss, Lead

Plaintiffs and Defendants participated in mediation before Lawrence W. Pollack, Esq. of JAMS in New York City. Following extensive arm's-length negotiations, Mr. Pollack sent the parties a Mediator's Proposal to settle the matter.

25. On November 7, 2016, before the parties could prepare and sign a settlement agreement and present it to the Court, the Court issued its MTD Order granting Defendants' Joint Motion to Dismiss. In light of these changed circumstances, the Settling Parties re-entered settlement negotiations. After further negotiations, with assistance from the mediator, the Settling Parties agreed to settle the action for $3,850,000.[3]

26. After the parties' agreement in principle to settle for $3.85 million, the parties drafted and negotiated the specific terms of the Stipulation, together with exhibits and certain other documents referred to herein. On May 15, 2017, the Stipulation was duly executed by the parties' representatives.

27. On May 24, 2016, Lead Plaintiffs moved for preliminary approval of the proposed Settlement and certification of a settlement class. *See* ECF Nos. 58-60. On May 25, 2016, the Court denied Lead Plaintiffs' motion without prejudice, stating that it does not grant preliminary approval of proposed class action settlements, and instructing Lead Plaintiffs to (i) revise the Stipulation and notices to eliminate all references to preliminary approval, and (ii) file a new motion that did not seek preliminary approval. *See* ECF No. 61.

28. On June 16, 2017, the revised Stipulation excluding any reference to "preliminary approval" was duly executed by the parties' representatives. On June 19, 2017, Lead Plaintiffs filed a revised motion seeking an order certifying the class for settlement purposes and approving

---

[3] On December 7, 2016, while the parties were negotiating settlement terms, Lead Plaintiffs filed a Notice of Appeal from the dismissal order to preserve their and the Class's rights. *See* ECF No. 56.

the form and manner of notice to the Settlement Class.

29. On June 28, 2017, the Court issued the Conditional Certification Order, set August 28, 2017 as the deadline for final approval papers, and scheduled the final Settlement Hearing for 4:00 p.m. on October 2, 2017.

30. Altogether, Lead Counsel has dedicated 1,062.26 hours prosecuting this Action and plaintiffs' additional counsel[4] has dedicated 120.4 hours prosecuting this Action. Lead Counsel's and additional counsel's total lodestar is $689,014.50 and Lead Counsel's total expenses are $12,723.86. Annexed hereto as Exhibit D is Lead Counsel's lodestar summary. Attached hereto as Exhibit C is plaintiffs' additional counsel's lodestar summary. Lead Counsel's expense summary is annexed hereto as Exhibit J. Under the lodestar approach, the requested fee of 33-1/3% of the Settlement Fund, or $1,283,333.33 (before any interest), yields a multiplier of approximately 1.86 of the time expended by Lead Counsel and additional counsel.

## V. ASSESSMENT OF THE STRENGTHS AND WEAKNESSES

31. Lead Counsel's investigation on liability (including causation) enabled Lead Plaintiffs to thoroughly evaluate the strengths and weaknesses of the claims and the risks of continued litigation. Accordingly, Lead Plaintiffs entered into the Settlement on a fully informed basis.

32. Lead Plaintiffs and Lead Counsel considered, *inter alia*: (i) the substantial cash benefit to the Settlement Class under the terms of the Stipulation; (ii) the merits of the parties' claims and defenses; (iii) the fact that the Court granted Defendants' motion to dismiss and the

---

[4] Plaintiffs' additional counsel is Kahn Swick & Foti, LLC.

unlikelihood of obtaining reversal on appeal;[5] (iv) in the unlikely event of reversal on appeal, the difficulties and risks involved in defending likely *Daubert* and/or summary judgment motions, and the likelihood of prevailing at trial; and (iv) the delays inherent in litigation, including appeals.

## VI. COMPARISON OF THE SETTLEMENT TO SIMILAR ACTIONS

33. The view that the Settlement is fair is supported by a comparison to the recent settlements of other securities class actions.

34. According to a 2017 report by NERA Economic Consulting entitled "Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review ("NERA Report")," in securities class actions where estimated damages were between $20 million and $49 million, as they are here, the median recovery was only 8.6% of recognized losses for cases that settled between January 1996 and December 2016. *See* NERA Report at 36, Figure 29, annexed hereto as Exhibit F.

35. Additionally, a report by Cornerstone Research indicates that in 2016, in securities class actions where estimated damages were less than $50 million, as they are here, the median recovery was only 7.3% of estimated damages. *See* Cornerstone Report at 8, Figure 7, annexed hereto as Exhibit G.

36. Accordingly, the $3.85 million Settlement here, which represents 9.78% of total estimated class-wide losses, compares favorably to the percentage of damages recovered in

---

[5] In the 12-month period ending March 31, 2016, the Second Circuit's overall reversal rate was 7.7%, and its reversal rate in private civil cases was 11.5%. *See* Exhibit E attached hereto (Table B-5, U.S. Courts of Appeal – Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending March 31, 2016, Federal Judicial Caseload Statistics, *available at*
http://www.uscourts.gov/sites/default/files/data_tables/fjcs_b5_0331.2016.pdf) (last visited August 28, 2017).

settlements of other securities class actions, and most of those other settlements do not involve court orders granting the defendants' dismissal motions.

## VII. REACTION OF THE CLASS

37.     To date, no objections to the Settlement, the Plan of Allocation, or the amount of Lead Counsel's fee request or expenses have been received.  Furthermore, as of August 23, 2017, the Claims Administrator has not received any requests for exclusion from the Settlement.  *See* A.B. Data Aff. ¶ 13.[6]

## VIII. PLAN OF ALLOCATION

38.     Pursuant to the Conditional Certification Order, and as explained in the Notice, all Settlement Class Members wishing to participate in the Settlement are to file a valid Proof of Claim Form on or before November 2, 2017.

39.     As set forth in the Notice, Settlement Class Members who file timely and valid Proof of Claim Forms will receive distributions from the Net Settlement Fund, after deduction of fees and expenses approved by the Court and taxes incurred on interest income earned by the Settlement Fund. The distributions will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice (*see* A.B. Data Aff. Ex. A, Notice at 4-5).  The Plan of Allocation was developed by Lead Counsel.

40.     As explained in the Notice, the Plan of Allocation apportions the recovery among Settlement Class Members who acquired CHC shares during the Class Period and were damaged thereby.

41.     The Plan of Allocation reflects an assessment of the damages that may have been

---

[6] The deadline for objections and exclusions is September 11, 2017. If any objections or exclusions are received subsequent to the filing of this motion, Plaintiffs will address them in a filing to be made on September 25, 2017.

12

recovered in the Action, had liability been successfully established, based on the amount of inflation that was removed from the price of CHC shares as a result of the corrective disclosures. The Plan of Allocation calculates each Settlement Class Member's total recognized losses and allocates recovery based on the timing of each Settlement Class Member's purchases and sales relative to the CHC share price declines after the disclosures. Specifically, the Recognized Loss is applied to shares that were purchased during the Class Period and held through the time of the alleged corrective disclosures on March 12, 2014 and July 9-10, 2014. Each Settlement Class Member will receive his or her or its pro rata share of the Net Settlement based on the calculation of his, her or its recognized loss.

42.     Lead Plaintiff and Lead Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved by the Court.

## IX.    LEAD COUNSEL'S FEE AND EXPENSE REQUESTS ARE REASONABLE

43.     Consistent with the law in the Second Circuit, Lead Counsel requests an award of attorneys' fees and expenses from the Settlement Fund based on a percentage of the Settlement Fund recovered for the Settlement Class. Lead Counsel is applying for a fee award of $1,283,333.33, which is 33-1/3% of the Settlement Fund (the "Fee Application"). Lead Counsel also requests reimbursement of expenses incurred in connection with the prosecution of this Action in the amount of $12,723.86 plus any accrued interest.

### A.     Lead Counsel's Qualifications and Work to Date

44.     Lead Counsel is a law firm with extensive experience in plaintiffs' securities class action litigation. Those credentials are set forth in the resume of Kirby McInerney LLP, annexed hereto as Exhibit H. Plaintiffs' additional counsel's credentials are set forth in Exhibit C annexed hereto.

45. As Lead Counsel in this Action, Kirby McInerney LLP has been responsible for all aspects of this litigation from the time it was appointed Lead Counsel on September 21, 2015 to date. The work performed during this period included:

(i) Researching the legal and factual bases for Lead Plaintiffs' claims and obtaining information concerning confidential witnesses;

(ii) Drafting the Amended Complaint;

(iii) Drafting a brief in opposition to Defendants' motion to dismiss;

(iv) Drafting a detailed mediation statement; and

(v) Attending an intensive mediation session and engaging in further settlement negotiations thereafter, which ultimately culminated in the $3.85 million Settlement agreed to by the parties.

46. Throughout the prosecution of this Action, Lead Counsel was very mindful of proceeding in an efficient manner to ensure there was no duplication of effort.

47. Lead Counsel further worked diligently to finalize and document the Settlement through negotiations with Defendants, the motion for conditional class certification, and the motion for final approval. Lead Counsel also oversaw the Claims Administrator and the notice process. Finally, Lead Counsel will be appearing at the Settlement Hearing and will continue to oversee the administration of the Settlement.

48. The quality of Lead Counsel's work in attaining the Settlement is notable in light of the quality of the opposition. The Defendants were represented by Dechert LLP and Davis Polk & Wardwell LLP, prominent international defense-oriented firms. Dechert LLP has over 900 attorneys and 30 offices worldwide, and Davis Polk & Wardwell LLP also has over 900 attorneys and 10 offices worldwide. In the face of this experienced and formidable opposition, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade the

Defendants to settle the case on terms favorable to the Settlement Class.

**B.     Lead Counsel's Fee Request**

49.     Exhibits D and C (specifically at Exhibit 1) (lodestar reports) reflect the amount of time spent by each attorney and professional support staff at Kirby McInerney LLP and Kahn Swick & Foti, LLC respectively, who were involved in this Action, and the lodestar calculation based on Lead Counsel's and plaintiffs' additional counsel's current billing rates. For attorneys and professional support staff who are no longer employed by Lead Counsel and additional counsel, the lodestar calculation is based upon the billing rates for such attorneys and staff in his or her final year of employment. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Lead Counsel and additional counsel, which are available at the Court's request. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

50.     The hourly rates for the attorneys and professional support staff included in Exhibits D and C (specifically at Exhibit 1) are the same range as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigations. The rates are in-line with the rates of other law firms that specialize in prosecuting or defending complex securities litigations.  Annexed hereto as Exhibit I is a table of billing rates for other securities class action plaintiffs' firms and defense firms compiled by Lead Counsel from fee applications submitted by such firms.

51.     The total number of hours expended on this litigation by plaintiffs' counsel is 1,182.66, consisting of 1,062.26 hours expended by Lead Counsel and 120.4 hours expended by plaintiffs' additional counsel. The total lodestar is $689,014.50, consisting of $522,892 for attorneys' time and $166,122.50 for professional support staff time.

52. The lodestar figures are based upon the firms' billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in Lead Counsel's and additional counsel's billing rates.

### C. Lead Counsel's Litigation Expenses

53. As detailed in Exhibit J attached hereto, Lead Counsel has incurred a total of $12,723.86 in unreimbursed expenses in connection with the prosecution of this Action. The majority of the expenses were from mediation and online legal research fees. Other expenses included filing fees, publication and travel.

54. The expenses incurred in this Action are reflected in Lead Counsel's books and records. These books and records are prepared from expense vouchers, check records, and other source materials, and are an accurate record of the expenses incurred.

55. Furthermore, the expenses incurred in the prosecution of this Action do not include the expenses of the Claims Administrator associated with providing Court-ordered notice to the Settlement Class and administering claims.

56. Lead Counsel believes that these expenses were reasonably and necessarily incurred and were, in fact, critical to Lead Plaintiffs' ability to obtain recovery here. Moreover, because Lead Counsel was aware, from the outset of the case, that it might not recoup any of its expenses or, at the very least, would not recover anything until this Action was successfully resolved, Lead Counsel was motivated to, and did take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the case.

57. In addition, the Notice provided to the members of the Settlement Class informed them that Lead Counsel would seek reimbursement of expenses incurred in the prosecution of the Action of no more than $55,000. *See* A.B. Data Aff. Ex. A, Notice at 2, 6. To date, no

member of the Settlement Class has raised an objection to that request.

## X.     SUMMARY LIST OF EXHIBITS

58.     Annexed hereto as Exhibit A is the Conditional Certification Order dated June 28, 2017 (ECF No. 67).

59.     Annexed hereto as Exhibit B is the is the Affidavit of Eric J. Miller Regarding Compliance with Notice Requirements in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated August 23, 2017, with Exhibits A and B.

60.     Annexed hereto as Exhibit C is the Declaration of Kim E. Miller in Support of Lead Counsel's Motion for an Award of Attorneys' Fees Filed on Behalf of Kahn Swick & Foti, LLC, dated August 21, 2017 with Exhibits 1 and 2.

61.     Annexed hereto as Exhibit D is Lead Counsel's lodestar summary.

62.     Annexed hereto as Exhibit E is Table B-5, U.S. Courts of Appeal – Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending March 31, 2016, Federal Judicial Caseload Statistics.

63.     Annexed hereto as Exhibit F is a 2017 report by NERA Economic Consulting entitled "Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review."

64.     Annexed hereto as Exhibit G is 2017 report by Cornerstone Research entitled "Securities Class Action Settlements: 2016 Review and Analysis."

65.     Annexed hereto as Exhibit H is the firm resume of Kirby McInerney LLP.

66.     Annexed hereto as Exhibit I is a table of comparable billing rates for securities class action plaintiffs' firms and defense firms compiled by Lead Counsel from fee applications submitted by such firms.

67.     Annexed hereto as Exhibit J is a schedule of Lead Counsel's litigation expenses.

68. Annexed hereto as Exhibit K is a copy of the Order and Final Judgment in *In re AudioEye, Inc. Sec. Litig.*, No. 15 Civ. 00163 (D. Ariz. May 8, 2017), ECF No. 100.

69. Annexed hereto as Exhibit L is a copy of the Judgment Approving Class Action Settlement in *Barfuss v. DGSE Companies, Inc.*, No. 12 Civ. 3664 (N.D. Tex. Oct. 21, 2013), ECF No. 59.

70. Annexed hereto as Exhibit M is a copy of the Order and Final Judgment of Dismissal with Prejudice in *Elliot v. China Green Agric., Inc.*, No. 10 Civ. 648 (D. Nev. Aug. 12, 2014), ECF No. 166.

71. Annexed hereto as Exhibit N is a copy of the Order and Final Judgment of Dismissal with Prejudice in *In re Maxwell Tech. Inc. Sec. Litig.*, No. 13 Civ. 00580 (S.D. Cal. Feb. 16, 2015), ECF. No. 84.

72. Annexed hereto as Exhibit O is a copy of the Order and Final Judgment in *In re Merix Corp. Sec. Litig.*, No. 04 Civ. 826 (D. Or. Jan. 3, 2011), ECF No. 236.

73. Annexed hereto as Exhibit P is a copy of the Order and Final Judgment in *Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 25, 2001), ECF No. 31.

74. Annexed hereto as Exhibit Q is a copy of the Order and Final Judgment in *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 08 Civ. 419 (E.D. Tex. May 2, 2012), ECF No. 85.

75. Annexed hereto as Exhibit R is a copy of the full docket text for the Judgment in *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03 Civ. 8284 (S.D.N.Y. Dec. 7, 2006), ECF No. 45.

76. Annexed hereto as Exhibit S is a copy of the Final Judgment and Order of Dismissal with Prejudice in *Van Dongen v. CNInsure Inc.*, No. 11 Civ. 7320 (S.D.N.Y. Aug. 15, 2014), ECF No. 57.

## XI.    CONCLUSION

77.    In view of the significant recovery to the Settlement Class, the substantial risks of this Action, the substantial efforts of Lead Counsel and plaintiffs' additional counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel and plaintiffs' additional counsel, Lead Counsel respectfully submits that: the Settlement should be approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; a fee in the amount of 33-1/3% of the $3.85 million Settlement Fund, or $1,283,333.33 plus any accrued interest, should be awarded to Lead Counsel; and litigation expenses in the amount of $12,723.86 plus any accrued interest, should be reimbursed in full.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2017 in New York, New York.

                                                          */s/ Ira M. Press*
                                                          IRA M. PRESS